**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SUSAN McCULLOUGH-SHERWIN, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| | ) | Case No. 13-cv-131 |
| Plaintiff, | ) ) | |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| ENERGIZER HOLDINGS INC., a Missouri corporation, | ) ) ) | |
| Defendant. | ) | |

**CLASS ACTION COMPLAINT**

Plaintiff Susan McCullough-Sherwin ("Plaintiff") brings this class action complaint against Defendant Energizer Holdings, Inc., ("Energizer" or "Defendant"), on behalf of herself and all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## I.    NATURE OF THE ACTION.

1.    Energizer, through its brands Banana Boat and Hawaiian Tropic, is the leading seller of sun care products in the United States.[1] With brands such as Wet Ones, Playtex, Schick, and Skintimate, Energizer has spent millions of dollars promoting itself as a provider of wholesome personal care products. Energizer manufactures, markets, sells, and distributes UltraMist sun lotion under its Banana Boat brand. UltraMist sun lotion is a sun care product that dispenses via an aerosol spray.

---

[1] Energizer Holdings Corp., Annual Report (Form 10-K) (Sep. 30, 2011).

2.      In October 2012, numerous consumers reported that their skin literally *caught fire* after applying lotion from an UltraMist bottle. Energizer's subsequent investigation revealed that the nozzle spray valve was too large on certain varieties of UltraMist, causing too much product to be dispensed. As a result, according to Energizer's website, "the product is taking longer to dry on the skin than is typical with other continuous sprays. If a consumer comes into contact with a flame or spark prior to complete drying of the product on the skin, there is a potential for the product to ignite."[2]

3.      On October 19, 2012, Energizer announced a voluntary recall of twenty-three varieties of Banana Boat UltraMist. This recall was conducted at the retail level only, and Energizer gave no clear instructions – for consumers who had already purchased the affected product – on what to do with it, and whether consumers were entitled to a refund.

4.      Because no reasonable consumer would purchase a sun care product knowing that it could ignite the user's skin, the affected UltraMist products are worthless. Accordingly, Plaintiff brings this action on behalf of herself and all consumers who purchased affected Banana Boat UltraMist sun care products manufactured, marketed, distributed, or sold by Energizer, for their monetary losses in paying for a now-demonstrably worthless product.

## II.      JURISDICTON & VENUE

5.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some of the members of the class are citizens of States different from Defendant.

---

[2] Energizer Holdings – Investor Relations – Press Release, http://phx.corporate-ir.net/phoenix.zhtml?c=124138&p=irol-newsArticle_print&ID=1747798 (last visited Jan. 4, 2013).

6.      This Court has personal jurisdiction over Defendant under the Illinois long-arm statute, 735 ILCS 5/2-209, because a substantial portion of the wrongdoing alleged in this Complaint took place in and/or was directed toward the State of Illinois. This Court also has personal jurisdiction over Defendant because Defendant is registered to do business, and is subject to general jurisdiction, in the State of Illinois. Defendant has marketed, promoted, distributed, and sold Banana Boat UltraMist sun care products in Illinois, and has sufficient minimum contacts in this State to render the exercise of jurisdiction by this Court permissible.

7.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while he resided in this judicial district.   Venue is also proper under 18 U.S.C. § 1965(a) because Defendant transacts substantial business in this District.

### III.      PARTIES

*Plaintiff*

8.      Plaintiff Susan McCullough-Sherwin ("Plaintiff") is a citizen of the State of Illinois. At all relevant times, Plaintiff resided in Cook County, Illinois.

9.      In August 2012, Plaintiff purchased a six-ounce bottle of Banana Boat UltraMist Kids Protect & Play SPF 85 Continuous Spray, on information and belief, at a Walgreens in Chicago, Illinois. The front of the product packaging stated that the product was "sun tested, sun proven," and "hypoallergenic." The back of the packaging stated: "Banana Boat Protect & Play Sunscreen Spray for kids with patented AvoTriplex technology provides UVA/UVB protection from sunburn and skin damage. This formula has been tested and proven effective in the sun [. . .] Quick-Drying." The bottle contained no warning of a potential fire hazard. Plaintiff's product was one of the twenty-three varieties listed in the recall notice, discussed below. As a result of

Energizer's conduct, Plaintiff suffered economic damage equal to the purchase price of the Banana Boat UltraMist product.

***Defendant***

10.     Defendant Energizer is a Missouri Corporation with its principal place of business in St. Louis, Missouri. Energizer is licensed to do business in Illinois.

11.     Energizer began selling personal care products in 2003 when it acquired the Schick brand of razors. Since then, it has expanded its personal care line to include Wet Ones, Playtex, Schick, Skintimate, Hawaiian Tropic, Banana Boat, and many other brands. Energizer has spent millions of dollars in promoting trust and confidence among consumers in its personal care products. It holds itself out to the public as a manufacturer of safe, healthy, and high-quality personal care products, and is engaged in the business of manufacturing, producing, marketing, distributing, advertising, and/or selling sun care products.

## IV.     FACTUAL ALLEGATIONS

***The Banana Boat UltraMist Product Line***

12.     Energizer launched its Banana Boat UltraMist line of aerosol sun products in 2010. Since the UltraMist product debuted, Energizer has sold over 20 million bottles.[3]

13.     The website that Energizer maintains for its Banana Boat brand proclaims that its sun care products are "ways to protect your fun," and are "skin cancer foundation recommended."[4] The website shows pictures of children and families playing in the sun:

---

[3]  Matthew Perrone, *Banana Boat Recalls Sunscreen Due to Fire Risk*, ASSOCIATED PRESS, Oct. 19, 2012, *available at* http://bigstory.ap.org/article/banana-boat-recalls-sunscreen-due-fire-risk (last visited January 5, 2013).
[4]  Banana Boat, http://www.bananaboat.com (last visited January 5, 2013).



14.     Front and back shots of a representative UltraMist sun care product follows:

Front                                                        Back

    

*The UltraMist Product Sets People On Fire*

15.      On October 19, 2012 Energizer announced that certain varieties of its sun products were defective, and posted a notice on the Banana Boat website that linked to a notice of recall.[5] The notice prominently displayed the Energizer Holdings Inc. logo, and explained that the UltraMist sun care product bottles contained a design defect which had caused at least five people to catch fire soon after applying the lotion. Energizer stated that the dispensing valve was too large, and caused too much product to be applied. As a result, Energizer explained, the product then takes too long to dry, and in its liquid form, could be ignited by a spark or flame. All twenty-three varieties of UltraMist sun care products contained this design flaw from their time of introduction to the marketplace in 2010.

16.      In its recall notice, Energizer announced it was "initiating a voluntary market withdrawal" of all twenty-three varieties of UltraMist sun care products [hereafter, "UltraMist Products"], but went on to say that this affected only its "retail partners." The notice advised consumers not to use the UltraMist Products, but gave no indication of whether consumers could return their UltraMist Products for a refund, or how consumers could go about collecting such a refund. The notice only gave a phone number where consumers could call with "questions or complaints."

17.      Consumers who called the number were played a recording that gave no clear indication of whether a refund was available, and if so, how to pursue one. Consumers who e-mailed the provided address received responses that made no mention of any consumer recall, or of any compensation or refund for consumers.

---

[5]      Energizer Holdings – Investor Relations – Press Release, http://phx.corporate-ir.net/phoenix.zhtml?c=124138&p=irol-newsArticle_print&ID=1747798.

18.     Energizer has thus sold over 20 million bottles of worthless UltraMist Products since January 2010, and retains the proceeds from the sales of those worthless products.

19.     As a result of Energizer's conduct, Plaintiff and other Class members sustained damages in the amount of the purchase price of the UltraMist Products.

## V.     CLASS ALLEGATIONS

20.     Plaintiff brings Counts I, as set forth below, on behalf of herself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks Certification of the following Class:

> All United States residents who purchased one of the UltraMist Products in one of the Consumer Fraud States[6] within the respective Consumer Fraud Act's statute of limitations (the "Multi-State Class").

Excluded from the Multi-State Class are Defendant, its parents, subsidiaries, affiliates, officers and directors; those persons who purchased UltraMist Products for the purpose of resale; all persons who make a timely election to be excluded from the Multi-State Class; and the judge to whom this case is assigned and any immediate family members thereof.

---

[6]     While discovery may alter the following, Plaintiff preliminarily avers that the States with similar consumer fraud laws under the facts of this case are: Arkansas (Ark. Code § 4-88-101, *et seq.*); California (Cal. Bus. & Prof. Code §17200, *et seq.* and Cal. Civil Code § 1750, *et seq.*); Colorado (Colo. Rev. Stat. § 6-1-101, *et seq.*); Connecticut (Conn. Gen. Stat. § 42-110, *et seq.*); Delaware (Del. Code tit. 6, § 2511, *et seq.*); District of Columbia (D.C. Code § 28-3901, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Hawaii (Haw. Rev. Stat. § 480-1, *et seq.*); Idaho (Idaho Code § 48-601, *et seq.*); Illinois (815 ICLS § 505/1, *et seq.*); Maine (Me. Rev. Stat. tit. 5 § 205-A, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.* ); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); Montana (Mo. Code. § 30-14-101, *et seq.*); Nebraska (Neb. Rev. Stat. § 59-1601, *et seq.*); Nevada (Nev. Rev. Stat. § 598.0915, *et seq.*); New Hampshire (N.H. Rev. Stat. § 358-A:1, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New Mexico (N.M. Stat. § 57-12-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349,*et seq.*); North Dakota (N.D. Cent. Code § 51-15-01, *et seq.*); Oklahoma (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon (Or. Rev. Stat. § 646.605, *et seq.*); Rhode Island (R.I. Gen. Laws § 6-13.1-1, *et seq.*); South Dakota (S.D. Code Laws § 37-24-1, *et seq.*); Vermont (Vt. Stat. tit. 9, § 2451, *et seq.*); Virginia (VA Code § 59.1-196, *et seq.*); Washington (Wash. Rev. Code § 19.86.010, *et seq.*); West Virginia (W. Va. Code § 46A-6- 101, *et seq.*); and Wisconsin (Wis. Stat. § 100.18, *et seq.*) (collectively, the "Consumer Fraud States").

21.     In the alternative to the immediately preceding paragraph, Plaintiff brings all counts, described below, on behalf of herself and all other similarly situated Illinois residents pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following class:

> All Illinois residents who, within the applicable statute of limitations, purchased one of the UltraMist Products (the "Illinois Class").

Excluded from the Illinois Class are Defendant, its parents, subsidiaries, affiliates, officers and directors; those persons who purchased Banana Boat UltraMist sun care products for the purpose of resale; all persons who make a timely election to be excluded from the Illinois Class; and the judge to whom this case is assigned and any immediate family members thereof.  The Multi-State and Illinois Classes are collectively referred to as the "Class" unless otherwise specified.

22.     Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of her claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

23.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that individual joinder of all Class members is impracticable. There are millions of consumers who have been damaged by Defendant's wrongful conduct as alleged herein. The precise number of Class members and their addresses is presently unknown to Plaintiff, but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

24.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

(a)     Whether the products sold by Defendant were unfit for their intended use;

(b)     Whether Defendant offered and/or is obligated to provide refunds for the defective products;

(c)     Whether Defendant failed to properly test the products prior to market entry (or at any other relevant time), such that an award of punitive damages is appropriate;

25.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of other Class members' claims because, among other things, all Class members were comparably injured through the misconduct described above and were subject to Defendant's dangerous and worthless product.

26.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the other Class members she seeks to represent; she has retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiff intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

27.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class members as a whole.

28.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy,

and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI. CLAIMS ALLEGED

### COUNT I
### Violation of State Consumer Fraud Acts
### (On behalf of the Multi-State Class and the Illinois Class)

29. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 – 28 above as if fully set forth herein.

30. In Illinois, the "Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq*. ("the Act"), like the consumer fraud acts of numerous other States across the nation, prohibits deceptive acts and practices in the sale of such products as the UltraMist Products.

31. Energizer does business in Illinois, sells and distributes their Banana Boat products in Illinois, including the UltraMist Products, and is engaged in deceptive acts and practices in connection with the sale of these products in a course of conduct involving trade and commerce in Illinois and throughout the United States.

32.     The UltraMist Products purchased by Plaintiff and the Class were "consumer items" as defined under the Act.

33.     Energizer intended for Plaintiff and other Class members to rely on Energizer's representations that the UltraMist Products were safe and fit for their intended purpose.

34.     However, the UltraMist Products are not safe and fit for their intended purpose. To the contrary, the UltraMist Products were defective and cannot be used for their intended purpose.

35.     Energizer continued to sell the UltraMist Products after Energizer knew or should have known that the representations being made about the products were false.

36.     Energizer failed to warn consumers of the danger of the UltraMist Products.

37.     Plaintiff and the other members of the Class were deceived by Energizer's unfair and deceptive acts and practices.

38.     Energizer failed to conduct a sufficient recall of the affected product at the consumer level that apprised consumers of their right to a refund or other compensation.

39.     Energizer has failed to provide a refund to consumers for the purchase price of the UltraMist Products which, for reasons detailed above, are demonstrably worthless.

40.     For the conduct described above, Energizer is in violation of the Illinois Consumer Fraud Act, 815 ILCS § 505/1, and of similar acts in other states. *See* supra n. 6. Energizer caused substantial injury to Class members that was not offset by countervailing benefits to consumers or competition, and was not reasonably avoidable by consumers.

41.     Plaintiff's and the other Class members' injuries were proximately caused by Energizer's fraudulent and deceptive behavior, which was conducted with reckless indifference towards the rights of others, such that an award of punitive damages is appropriate.

## VII.   JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## VIII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court enter an Order awarding the following relief:

(a)   Declaring that this action is a proper class action; certifying either the Multi-state Class, or in the alternative, the Illinois class; designating Plaintiff as Representative for all classes; and appointing the undersigned counsel as Class Counsel;

(b)   Awarding compensatory and actual damages, including restitution and disgorgement of Defendant's revenues to Plaintiff and other Class Members generated from the unlawful practices set forth herein;

(c)   Enjoining Defendant from continuing the unlawful practices set forth herein;

(d)   Awarding statutory damages to Plaintiff and the other Class members, as provided by the applicable Consumer Fraud Acts;

(e)   Awarding attorneys' fees and costs to Plaintiff and the other members of the Class; and

(f)   Such other and further relief as may be just and proper.


Dated: January 9, 2013                    Respectfully submitted,

                                          SUSAN McCULLOUGH-SHERWIN,
                                          individually, and on behalf of all others
                                          similarly situated

                                          By: _____
                                              One of the Attorneys for Plaintiff
                                              And the Proposed Putative Class

Joseph J. Siprut
*jsiprut@siprut.com*
Aleksandra M. S. Vold
*avold@siprut.com*
Tyler Zanders
*tzanders@siprut.com*
**SIPRUT** PC
17 North State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.948.9196

4851-5195-7010, v. 4